In the

# United States Court of Appeals
## For the Fourth Circuit
_____

RENTGROW, INC.,

*Defendant-Appellant*,

v.

MARCO A. FERNANDEZ,

*Plaintiff-Appellee.*

_____

On Appeal from United States District Court for the
District of Maryland, No. 19–01190–JKB

_____

## BRIEF OF APPELLANT
_____

Maura K. Monaghan
Kristin D. Kiehn
Emilia N. Brunello
**DEBEVOISE & PLIMPTON LLP**
919 Third Ave.
New York, NY 10022
Tel: (212) 909–6000
Fax: (212) 909–6836
mkmonaghan@debevoise.com
kdkiehn@debevoise.com
enbrunello@debevoise.com

Bonnie Keane DelGobbo
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Tel: (312) 416–6200
bdelgobbo@bakerlaw.com

Joel Griswold
**BAKER & HOSTETLER LLP**
SunTrust Center
200 South Orange Ave., Suite 2300
Orlando, Florida 32801–3432
Tel: (407) 649–4088
jcgriswold@bakerlaw.com

*Counsel for Defendant-Appellant RentGrow, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Case No. 22–1619

*RentGrow, Inc. v. Marco A. Fernandez*

Defendant-Appellant RentGrow, Inc. ("RentGrow"), pursuant to Federal Rule of Appellate Procedure 26.1, discloses as follows:  RentGrow is a wholly owned subsidiary of Yardi Systems, Inc., which is not a publicly held corporation. RentGrow is a Delaware privately held corporation and has no further interest to disclose.

By: /s/ Maura K. Monaghan

*Counsel for Defendant-Appellant RentGrow, Inc.*

## TABLE OF CONTENTS

**Page**

**JURISDICTION** ...........................................................................................1

**STATEMENT OF ISSUES** ........................................................................1

**STATEMENT OF THE CASE** ...................................................................2

    A.    RentGrow's Tenant Screening Services ....................................2

    B.    Fernandez's Tenant Screening Experience................................5

    C.    The Fair Credit Reporting Act .................................................7

    D.    The Grant of Class Certification and RentGrow's Appeal.........8

**SUMMARY OF THE ARGUMENT** ........................................................10

**STANDARD OF REVIEW** ......................................................................15

**ARGUMENT** ...........................................................................................16

    I.    THE DISTRICT COURT ERRED IN HOLDING THAT
        FERNANDEZ SUFFERED ARTICLE III INJURY AND CAN
        REPRESENT THE CLASS ....................................................16

        A.    The Supreme Court's Analysis in *TransUnion v. Ramirez* ......17

        B.    Application to Fernandez .........................................20

    II.    THE DISTRICT COURT ABUSED ITS DISCRETION BY
        CERTIFYING A CLASS BASED ON THE ERRONEOUS
        HOLDING THAT ALL CLASS MEMBERS SUFFERED
        ARTICLE III INJURY ...........................................................24

**CONCLUSION AND RELIEF SOUGHT** ...............................................32

**REQUEST FOR ORAL ARGUMENT** ....................................................33

**CERTIFICATE OF COMPLIANCE** ......................................................34

**CERTIFICATE OF SERVICE** ................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................... 25

*Baehr v. Creig Northrop Team, P.C.,*
953 F.3d 244 (4th Cir. 2020), *cert. denied,*
141 S. Ct. 373 (2020)..........................................................................16, 21, 23

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) ......................................................29, 31

*Casillas v. Madison Ave. Assocs., Inc.,*
926 F.3d 329 (7th Cir. 2019) ..........................................................27

*Dalton v. Capital Associated Indus., Inc.,*
257 F.3d 409 (4th Cir. 2001) ...............................................................8

*Deiter v. Microsoft Corp.,*
436 F.3d 461 (4th Cir. 2006) ...........................................................30

*Dreher v. Experian Information Solutions, Inc.,*
856 F.3d 337 (4th Cir. 2017) ............................................................17

*EQT Production Co. v. Adair,*
764 F.3d 347 (4th Cir. 2014) ......................................................15, 30

*Ewing v. MED-1 Solutions, LLC,*
24 F.4th 1146 (7th Cir. 2022) ....................................................25, 26

*Frank Krasner Enterprises, Ltd. v. Montgomery Cnty.,*
401 F.3d 230 (4th Cir. 2005) ............................................................15

*Great Atlantic & Pacific Tea Co. v. Paul,*
256 Md. 643 (Md. 1970)...................................................................18

*Heiderman v. S. Salt Lake City,*
348 F.3d 1182 (10th Cir. 2003) ......................................................22

*In re Interior Molded Doors Antitrust Litig*.,
 No. 3:18-CV-00718-JAG,
 2019 WL 4478734 (E.D. Va. Sept. 18, 2019) ...........................................16, 25

*Klotz v. Trans Union, LLC*,
 246 F.R.D. 208 (E.D. Pa. 2007).........................................................................31

*Lucas v. Moore Transport of Tulsa, LLC*,
 No. CV RDB-18-0888, 2018 WL 4052194
 (D. Md. Aug. 24, 2018) ......................................................................................18

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)..........................................................................16, 20, 24

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
 19 F.4th 58 (2d Cir. 2021) ...........................................................19, 28, 29

*Peterson v. Nat'l Telecomms. & Information Admin.*,
 478 F.3d 626 (4th Cir. 2007) .............................................................................15

*Pierre v. Midland Credit Mgmt., Inc*.,
 Nos. 19–2993 & 19–3109, 2022 WL 986441
 (7th Cir. Apr. 1, 2022), *reh'g denied*, 36 F.4th 728 (7th Cir. 2022) ............23, 27

*Prado-Steiman ex rel. Prado v. Bush*,
 221 F.3d 1266 (11th Cir. 2000) .......................................................................16

*Ramirez v. TransUnion LLC*,
 No. 3:12—cv-00632-JSC, ECF No. 128–4 (N.D. Cal.) ....................................28

*Scottsdale v. Cap. Advisors Corp. v. The Deal, LLC*,
 887 F.3d 17 (1st Cir. 2018)........................................................................18, 21

*Spokeo, Inc. v. Robins*,
 578 U. S. 330 (2016)...................................................................................16, 17

*Steel Co. v. Citizens for Better Environment*,
 23 U.S. 83 (1998).................................................................................................21

*Summers v. Earth Island Inst*.,
 555 U.S. 488 (2009).............................................................................................16

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ...............................................................15

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).............................................................*passim*

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) (Roberts, C. J., concurring)..............................24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................29, 30

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................................................23

## Statutes

28 U.S.C. § 1331 .......................................................................................1

50 U.S.C. § 4303 .......................................................................................3

Fair Credit Reporting Act, 15 U.S.C. § 1681 ...................................*passim*

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ..........................26

## Other Authorities

31 C.F.R. § 594.20 ....................................................................................4

Fed. R. App. P. 5 ..................................................................................1,33

Fed. R. Civ. P. 23 ..............................................................................*passim*

General Questions, U.S. Dept. of the Treasury at 1, available at
    https://home.treasury.gov/policy-issues/financial-
    sanctions/faqs/topic/1501 (last accessed July 28, 2022) .....................3

Rest. (Second) of Torts § 577 cmt. c ...............................................23, 26

# JURISDICTION

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 over this action filed by Plaintiff-Appellee Marco Fernandez ("Fernandez") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b). On March 9, 2022, the district court granted Fernandez's motion for class certification. J.A. 410. On March 24, 2022, Defendant-Appellant RentGrow, Inc. ("RentGrow") filed a petition for leave to appeal the class certification order pursuant to Fed. R. App. P. 5(a) and Fed. R. Civ. P. 23(f). This Court granted RentGrow's petition on June 7, 2022, No. 22–146, Dkt. 2, 18, and has appellate jurisdiction under Rules 5 and 23(f).

# STATEMENT OF ISSUES

Fernandez alleges that RentGrow violated the FCRA by willfully failing to follow "reasonable procedures to assure maximum possible accuracy" of tenant screening reports. Specifically, Fernandez alleges that RentGrow provided tenant screening reports to property owners and managers indicating that prospective tenants were a "possible match" to someone listed on the U.S. Treasury Department Office of Foreign Assets Control's Specially Designated Nationals List (the "OFAC/SDN list"), when, in fact, there was no actual match.

The district court certified the following class:

"All individuals who were the subject of a consumer report (1) furnished by [RentGrow] to a third party between April 23, 2017 and

1

May 24, 2019 at 7:28 a.m. and (2) which reported OFAC/SDN information indicating a possible match, and (3) where there is not also a match between the (a) date of birth, (b) address, or (c) social security number associated with the subject of the report and the corresponding information regarding the person on the OFAC/SDN List."

J.A. 379, J.A. 409.

RentGrow challenges this class certification order, which raises two issues:

1. Whether the district court misapplied the Supreme Court's framework in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), by holding that Fernandez suffered an Article III injury, and can thus pursue an FCRA damages claim as class representative, where his property manager testified, under oath, to having no memory of reading OFAC/SDN "possible match" information in his tenant screening report and took no adverse action as a result of the information.

2. Whether the district court abused its discretion by certifying a class even though each class member, to establish Article III standing to pursue an FCRA damages claim, will need to individually show that the OFAC/SDN "possible match" information in their tenant screening report was "actually read" by a third party and "not merely processed." *TransUnion*, 141 S. Ct. at 2210 n.6.

## STATEMENT OF THE CASE

### A.    RentGrow's Tenant Screening Services

RentGrow provides tenant screening reports to property owners and managers, who use the reports to evaluate prospective tenants' qualifications. J.A. 161, J.A. 200–201, J.A. 226. RentGrow provides tenant screening reports after

receiving from its clients the name and other identifying information for each applicant, using that information to collect data from consumer reporting agencies and public records sources, and then filtering out information that is not reportable for any number of reasons by applying RentGrow's own processes and procedures to assure maximum possible accuracy.  J.A. 036, J.A. 171–174.

It is illegal for U.S. companies to do business with persons deemed by the U.S. government to be "an enemy or ally of enemy."  50 U.S.C. § 4303.  To facilitate enforcement of the statute, the U.S. Treasury Department publishes the OFAC/SDN list of persons subject to economic sanctions.  *See* General Questions, U.S. Dept. of the Treasury at 1, *available at* https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1501 (last accessed July 28, 2022).  To assist its customers in complying with the law, RentGrow conducts searches of prospective tenants' names against the OFAC/SDN list as part of its screening service.  J.A. 234, J.A. 162.  The OFAC/SDN search is not a stand-alone product with a separate cost to RentGrow's clients; rather, the OFAC/SDN possible match information is one of many data points that appear in a tenant screening report, which can include information about credit history, rental history, criminal background, and civil court records, among other things, depending on the screening criteria established by the individual property manager. J.A. 183.

RentGrow's screening reports do not state that an applicant is an actual match to a name on the OFAC/SDN list or that any prospective tenant actually is a person on the OFAC/SDN list.  J.A. 162, J.A. 260, J.A. 270–271.  Instead, if an applicant is a possible match to an entry on the OFAC/SDN list, the report includes a bullet point under a heading titled "Items to Review" that states "Possible Match[es] in OFAC Name Search" and a similar bullet in a list summarizes the searches performed.  J.A. 231, J.A. 260, J.A. 270–271, J.A. 263–264.  A section of the report titled "OFAC/SDN Search" also indicates that there is a "Possible Record Found" and includes the full text of the entry from the Treasury Department's OFAC/SDN list.  J.A. 231, J.A. 260, J.A. 270–271, J.A. 263–264. RentGrow's customers—as the persons leasing property to applicants—are responsible for conducting any further inquiry at their option to determine whether the applicant actually is a person on the OFAC/SDN list.  J.A. 177–178; *see also*, *e.g.*, 31 C.F.R. § 594.20.

Each screening report includes an overall "Result" field indicating "Accept," "Accept with Conditions," or "Reject," which is determined by screening criteria established exclusively by each property manager at their discretion.  J.A. 175–176, J.A. 234.  Importantly, the OFAC/SDN screen result does not and cannot factor into the overall "Result," and thus a possible OFAC/SDN match never causes a report to return a result of "Reject" or "Accept with Conditions."  J.A.

234–235.  As such, it is not unusual for tenant screening reports to return a result of "Accept" or "Accept with Conditions" while also including information about a possible match to someone on the OFAC/SDN list.  J.A. 234.

## B. Fernandez's Tenant Screening Experience

On November 16, 2018, Fernandez submitted an application to rent an apartment at the Dorsey Ridge apartment complex in Hanover, Maryland. J.A. 081, J.A. 350.  Dorsey Ridge requested a tenant screening report from RentGrow, which returned the result "Reject" and identified the reason as "Criminal History Does Not Meet Property Requirements."  J.A. 183, J.A. 196–197, J.A. 212–213, J.A. 250–251.  The report indicated that a person with the same first name, last name, middle initial, and birth year as Fernandez was convicted in 2012 of crimes in California, which was Fernandez's state of residence when he applied to Dorsey Ridge.  J.A. 189–190, J.A. 352.  As a result, on November 16, 2018, Fernandez's application was denied by Ms. Porsche Kemp, senior property manager for Dorsey Ridge.  J.A. 352.  Fernandez, however, quickly explained that the criminal records did not belong to him and, on November 18, 2018, his rental application was approved.[1]  J.A. 352.

Separate and apart from the "Result" field referencing criminal history information, Fernandez's report noted as an "Item[] to Review" that there was "1

---

[1] Fernandez has brought an individual FCRA claim against RentGrow based on its criminal records reporting procedures, which is not at issue on this appeal.

Possible Match in OFAC Name Search." J.A. 183, J.A. 250–251. The report

provided the following information taken directly from the OFAC/SDN list:

| OFAC/SDN SEARCH | | |
| --- | --- | --- |
| REQUEST DATE | COMPLETED | STATUS |
| 11/16/2018 10:56 AM | 11/16/2018 10:56 AM | 1 Possible Record Found |
| Database(s) Searched: | US Treasury Department - OFAC - SDN & Blocked Persons | |

FERNANDEZ SANTANA, Mario Alberto - *individual*

| ADDRESS | | DATABASE |
| --- | --- | --- |
| Av. Moctezuma 4297, Col. Jardines del Sol Zapopan, Jalisco Mexico | | US Treasury Department - OFAC - SDN & Blocked Persons |

| RECORD ID | PROGRAM | REMARKS |
| --- | --- | --- |
| 21070 | SDNTK | DOB 09 May 1977; POB Guadalajara, Jalisco, Mexico; citizen Mexico; Gender Male; R.F.C. FESM770509RQ7 (Mexico); C.U.R.P. FESM770509HJCRNR06 (Mexico); Linked To: FLORES DRUG TRAFFICKING ORGANIZATION; Linked To: EVENTOS LA MORA, S.A. DE C.V.; Linked To: MONTALVA INMOBILIARIA, S.A. DE C.V. |

J.A. 169–170, J.A. 183.

Fernandez's property manager, Ms. Kemp, testified that she had no

recollection of reviewing OFAC/SDN possible match information in Fernandez's

screening report and that his application was not initially denied as a result of such

information. J.A. 214–215. She further testified that she was not sure what OFAC

refers to or where on RentGrow's tenant screening reports such information

appears. J.A. 207, J.A. 215. Fernandez did not present evidence that anyone else

at Dorsey Ridge, or any other third party, ever read the OFAC/SDN "possible

match" information in his tenant screening report, or that he suffered any negative

consequence from the inclusion of the information in his report. J.A. 255–256,

J.A. 248, J.A. 252, J.A. 273–274, J.A. 275–276.

Nor did Fernandez present evidence that the prospective landlord of any other putative class member actually reviewed the OFAC/SDN "possible match" information in a RentGrow tenant screening report or took adverse action against any class member as a result of such information. J.A. 275, J.A. 277–279. To the contrary, Ms. Kemp testified that she could not recall reviewing OFAC/SDN information in the reports for *any* applicant to her properties. J.A. 207–208, J.A. 215. Furthermore, the standard practice at Questar Management, which manages Dorsey Ridge, is not to review the entire screening report if the result is "Accept." J.A. 196–197, J.A. 203–204. It is undisputed that the presence of an OFAC/SDN "possible match" would never prevent a report from resulting in "Accept" because OFAC/SDN search results do not factor into the result reported in RentGrow's screening reports. J.A. 175–176, J.A. 234–235.

Finally, Ms. Kemp confirmed that to determine whether any given leasing agent reviewed an entire report for any particular applicant to a Dorsey Ridge property, one would need to speak to the individual leasing agent who reviewed the screening information. J.A. 204.

## C.    The Fair Credit Reporting Act

The FCRA requires that RentGrow "follow reasonable procedures to assure maximum possible accuracy of the information" in tenant screening reports. 15 U.S.C. § 1681e(b). The FCRA provides a cause of action for an individual who

demonstrates that the failure to follow reasonable procedures to assure accuracy caused a report to be inaccurate. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415–16 (4th Cir. 2001). A successful plaintiff who proves a willful violation of the FCRA can recover (*i*) either statutory damages of up to $1,000 or actual damages, (*ii*) reasonable attorney's fees, and (*iii*) punitive damages "as the court may allow." 15 U.S.C § 1681n(a)(1)–(3).

## D.    The Grant of Class Certification and RentGrow's Appeal

Following fact discovery, RentGrow moved for summary judgment[2] and Fernandez moved for class certification. The district court denied RentGrow's summary judgment motion and certified a class. J.A. 410.

In adjudicating the class certification motion, the district court correctly recognized that Fernandez and each class member must have Article III standing to obtain damages for a Section 1681e(b) violation. J.A. 348. The district court also considered the Supreme Court's recent opinion in *TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021), in which consumer classes advanced FCRA claims premised on allegedly inaccurate OFAC/SDN information in their credit reports. Analogizing the alleged harm to the common law tort of defamation, the *TransUnion* court affirmed a jury verdict in favor of a class whose credit reports were disseminated

---

[2] Fernandez brought an individual FCRA claim based on RentGrow's criminal records reporting procedures, and individual and class claims based on its OFAC/SDN reporting procedures. The district court denied summary judgment on both claims. The former claim is not at issue in this appeal.

by TransUnion to third parties and reversed a verdict in favor of a class whose reports remained in TransUnion's files. *Id.* at 2214. The Court held that the latter group did not suffer Article III injury because information that "sits in a company database" is akin to an unsent letter and causes "no concrete harm." *Id.* at 2210.

The district court acknowledged that individualized inquiries "undoubtedly" would predominate if each class member is required to produce evidence that the OFAC/SDN search information in their tenant screening report was actually read by a third party. J.A. 361. However, suggesting that to follow the Supreme Court's framework would render it "functionally impossible to sustain a class action under § 1681e(b)," the district court held that Fernandez and every class member suffered an Article III injury on the basis of mere transmission of their tenant screening report to a third party, notwithstanding the uncontroverted evidence that the OFAC/SDN information in Fernandez's and other putative class members' screening reports was not actually read or understood and caused no concrete harm. J.A. 358–362.

Having eliminated the individualized inquiries necessary to establish Article III standing, the district court certified the following class, opining that it would include a significant number of the 71,036 persons whose tenant screening reports included reference to a possible OFAC/SDN match[3]:

---

[3] The district court did not hold oral argument on the class certification motion.

All individuals who were the subject of a consumer report (1) furnished by Defendant to a third party between April 23, 2017 and May 24, 2019 at 7:28 a.m. and (2) which reported OFAC/SDN information indicating a possible match, and (3) where there is not also a match between the (a) date of birth, (b) address, or (c) social security number associated with the subject of the report and the corresponding information regarding the person on the OFAC/SDN List.[4]

J.A. 379, 409. Although not stated in the class definition, the district court observed that Fernandez had waived his claim for actual damages and seeks solely statutory and punitive damages on behalf of the class. J.A. 357, J.A 379, J.A. 388.

RentGrow timely petitioned for leave to appeal pursuant to Rule 23(f). This Court granted the petition, and this Appeal follows.

## SUMMARY OF THE ARGUMENT

The district court's class certification order disregarded bedrock principles of Article III standing and departed from controlling Supreme Court precedent.

It is axiomatic that Fernandez and each class member must have Article III standing to recover damages for their FCRA claim in federal court. In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Supreme Court set out the analytical

---

[4]  The district court recognized that "if this case proceeds to trial, Fernandez will need to persuade a jury that the reports were inaccurate across the class" and recognized that "in many instances, perhaps even most instances, a case requiring a file-by-file evaluation of the accuracy of the challenged records is not suitable for class resolution." J.A. 397–399. The court nonetheless deemed this a "peculiar situation" because RentGrow "has not identified an individual who it believes is a match . . . ." and approved a methodology under which every report is deemed inaccurate unless there is a match in one of the court's three selected criteria. J.A. 382, J.A. 391, J.A. 409. The district court thus effectively shifted the burden to RentGrow to prove the reports are accurate.

framework for determining whether someone suffered an Article III injury sufficient to sustain an FCRA damages claim premised on allegedly inaccurate OFAC/SDN search information in a screening report—the theory of liability asserted by Fernandez. The Court likened the alleged injury to the tort of defamation, observing that defamatory injury requires evidence that a defendant "actually 'brought an idea to the perception of another,'" meaning that the defamatory information was "actually read" and "not merely processed." *Id.* at 2210 n.6. This is consistent with decades of case law on the requirements for a defamation claim. As the Court observed, an unread defamatory letter "does not harm anyone." *Id.* at 2210.

Here, it is undisputed that Fernandez's property manager had no memory of reviewing information in his tenant screening report about a possible match to a name on the OFAC/SDN list, and furthermore, took no adverse action against him as a result of such information. Indeed, Fernandez's lease was approved and he moved into the apartment. As such, the presence of OFAC/SDN possible match information in Fernandez's tenant screening report had no impact on him, reputational or otherwise, and did not cause him any real-world harm. These facts stand in stark contrast to the *TransUnion* plaintiff, who was told by a car dealer that Nissan would not sell him a car because he was on a terrorist list.

Information that is transmitted but not read or absorbed by a third party, as in Fernandez's case, is quintessentially information that is "merely processed" and does not cause a defamatory injury. *Id*. at 2210 n.6. Notwithstanding the uncontroverted evidence that Fernandez suffered no harm, the district court held that he had Article III standing on the mere basis of transmission of his tenant screening report to the Dorsey Ridge property management company. The district court's analysis, grounded in an overly expansive interpretation of *TransUnion*, lost sight of the fundamental tenet of Article III injury: "No concrete harm, no standing." 141 S. Ct. at 2200. The class certification order should be reversed on this basis alone: Fernandez lacks standing and cannot represent the class.

The district court also erred in certifying a class based on its conclusion that tens of thousands of class members suffered Article III injury on the basis of mere transmission of their tenant screening reports to a third party, despite uncontroverted evidence demonstrating that OFAC/SDN information in many cases is *not* reviewed by property managers and results in *no* harm to the applicant. This evidence included the testimony of Fernandez's property manager, who had no recollection of reviewing OFAC/SDN possible match information in other prospective tenants' screening reports, did not know where in the report such information typically appears, and did not even know what OFAC refers to. Moreover, her company had a practice of not reading the full report if the result

based on the property management's screening criteria was "Accept." It is undisputed that an OFAC/SDN possible match does not factor into the result in RentGrow's reports and does not prevent a report from resulting in "Accept."

Contrary to the district court's interpretation, *TransUnion* does not stand for the sweeping proposition that mere transmission of OFAC/SDN possible match information in a report to a third party automatically causes a constitutionally cognizable injury. Importantly, the question of whether each third-party business in *TransUnion* actually read the OFAC/SDN search result in the consumer credit reports at issue was not contested before the Supreme Court. The Court took up the question of standing following a jury verdict in favor of the class. Ramirez himself quite obviously suffered a concrete harm, having been denied a vehicle purchase by the dealer explicitly because of the OFAC report. Moreover, the Court reversed the verdict for a class of consumers whose reports remained in TransUnion's files, tracing the history of the "fundamental" publication requirement in defamation law and cautioning that information which is "merely processed" and not "actually read" does not cause an actionable injury. 141 S. Ct. at 2210, 2209–10 & n.6 (noting "the mere existence of inaccurate information in a database is insufficient to confer Article III standing"). The Court's unstated assumption that the third-party businesses actually read the OFAC/SDN information in the reports disseminated to them was also supported by the fact that,

unlike here, the businesses had specifically opted into the purchase of an OFAC/SDN search product sold by TransUnion.

It is self-evident that information that is never transmitted to a third party has never been "actually read" by a third party. But the converse is not true. The simple act of transmission to a third party does not itself prove that the information was read or absorbed. Other Circuit Courts of Appeal analyzing *TransUnion* have recognized that even where information is transmitted to a third party or posted publicly, the standing analysis requires a second step beyond that of mere transmission—*i.e.*, did a third party actually read and understand the information?

Here, the uncontroverted evidence establishes that the OFAC/SDN possible match information included in tenant screening reports disseminated by RentGrow frequently was *not reviewed* by property managers and in Fernandez's case specifically was *not read*. This makes all the more clear that in this case, the second step in the standing analysis is critical. Just as it would be inappropriate to extrapolate from the evidence in this case to conclude that no third party ever read the OFAC/SDN information in a tenant screening report, so too is it inappropriate—indeed impossible—to conclude that a third party *always* read the information. Instead, the question of whether the information was actually read, and thus caused a class member a defamation-like injury, requires individualized inquiries.

By disregarding the record evidence, the district court's standing analysis effectively eliminated Article III's concrete harm requirement for Fernandez and the class at large. This flawed analysis led the court to conclude erroneously that no individualized inquiries into Article III standing would be necessary and that common questions predominate. As a result, the district court erroneously concluded that Fernandez met his burden of establishing Rule 23's predominance, ascertainability, commonality, typicality, and superiority elements.

The certification order was an abuse of discretion and should be reversed.

## STANDARD OF REVIEW

This Court reviews a class certification order for abuse of discretion, which occurs when the order "materially misapplies the requirements of Rule 23." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (citation omitted). A district court abuses its discretion *per se* "when it makes an error of law or clearly errs in its factual findings." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). Whether a plaintiff has Article III standing is reviewed *de novo*. *See Peterson v. Nat'l Telecomms. & Info. Admin.,* 478 F.3d 626, 631 n.2 (4th Cir. 2007) (citing *Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 234 (4th Cir. 2005)).

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN HOLDING THAT FERNANDEZ SUFFERED ARTICLE III INJURY AND CAN REPRESENT THE CLASS

Prior to certifying a class, "the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see also In re Interior Molded Doors Antitrust Litig.*, No. 3:18-CV-00718-JAG, 2019 WL 4478734, at *12 (E.D. Va. Sept. 18, 2019). Article III standing requires an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted).

A statutory violation standing alone does not create a sufficiently concrete injury. *See TransUnion*, 141 S. Ct. at 2205; *Spokeo, Inc. v. Robins*, 578 U. S. 330, 341 (2016). Rather, a constitutionally cognizable injury requires a "real" harm with an adverse effect. *TransUnion*, 141 S. Ct. at 2203–04; *see also Baehr v. Creig Northrop Team, P.C.,* 953 F.3d 244, 253(4th Cir. 2020) (noting "injury-in-fact is a 'hard floor' of Article III standing 'that cannot be removed by statute'" (*quoting Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009))), *cert. denied*, 141 S. Ct. 373 (2020). To determine whether a party asserting a statutory violation has suffered such an injury, courts look to "whether the alleged injury to the

plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion,* 141 S. Ct. at 2200 (*quoting Spokeo*, 578 U.S. at 341); *see also Dreher v. Experian Info. Sols., Inc*., 856 F.3d 337, 345 (4th Cir. 2017).

### A.    The Supreme Court's Analysis in *TransUnion v. Ramirez*

In *TransUnion*, the Supreme Court reviewed the propriety of class certification following a jury verdict for the plaintiff.  141 S. Ct. at 2202.  The jury found that TransUnion violated Section 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information contained in OFAC Name Screen Alerts, an add-on product offered by TransUnion in addition to its standard credit reporting services.  *Id*. at 2201.

The Court held that the asserted injury in an FCRA damages action premised on the communication of inaccurate OFAC/SDN search results bears a close relationship to the tort of defamation.  *Id*. at 2208.  The Court further observed that "[u]nder longstanding American law, a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party," thereby causing "reputational harm."  *Id*. (internal citation omitted). In discussing the requirements for "actionable publications for purposes of the tort of defamation," the Court observed that "cases require evidence that the defendant actually 'brought an idea to the perception of another . . . and thus generally

require evidence that the document was actually read and not merely processed." *Id*. at 2210 n.6 (internal citation omitted). Contrary to the district court's interpretation, the Court did not ever state that mere transmittal is enough; its analysis focused on whether the injurious information was read or perceived by another person.

The "actually read" requirement is consistent with Maryland defamation law, which holds that "for alleged defamatory words to be actionable they must be seen or heard by some person other than the plaintiff and defendant. There is the further qualification that this third person must understand the meaning of the words." *Great Atlantic & Pacific Tea Co. v. Paul*, 256 Md. 643, 648 (Md. 1970); *see also Lucas v. Moore Transport of Tulsa, LLC*, No. CV RDB-18-0888, 2018 WL 4052194, at *4 (D. Md. Aug. 24, 2018) (noting element of publication requires plaintiff to "establish that the alleged defamatory words were 'seen or heard by some person other than the plaintiff and defendant'") (internal citation omitted); *cf. Scottsdale v. Cap. Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 21 (1st Cir. 2018) (holding that publication "means to communicate the defamatory material to a third party . . . where that third party understands the defamatory significance of the material").

*TransUnion* evaluated two putative classes—one whose OFAC Name Screen Alerts were disseminated by TransUnion to third-party businesses and one

whose reports remained in TransUnion's internal files. 141 S. Ct. at 2208–10. The Court concluded that the former group of class members sustained an Article III injury, while the latter group did not. *Id*. at 2214. In finding that the "internal file" group suffered no cognizable injury, the Court noted that evidence that the OFAC Name Screen Alerts were actually read by a third party and not merely processed was "lacking." *Id*. at 2210 n.6.

By contrast, the Court was satisfied that the OFAC Name Screen Alerts disseminated to third-party businesses were actually read. This was not a contested point before the Court, but was a reasonable conclusion supported by the record evidence. It was undisputed that Ramirez's creditor read and understood the alert: a key point in evidence was that a salesman explicitly told him that Nissan would not sell a car to him because he was on a terrorist list. *Id*. at 2201–02. TransUnion's clients had also specifically opted into the purchase of the OFAC Name Screen Alert as an add-on product. *Id*. at 2201. In analyzing *TransUnion*, the Second Circuit Court of Appeals concluded that there can be "no doubt" that the third-party businesses actually read the OFAC Name Screen Alerts, "which they had specifically requested and paid for." *Maddox v. Bank of New York Mellon Tr. Co., N.A*., 19 F.4th 58, 65 (2d Cir. 2021) (dismissing claim for lack of standing in absence of proof anyone read incorrect mortgage record).

## B.    Application to Fernandez

Fernandez bears the burden of establishing that he has standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  At the summary judgment stage, Fernandez cannot rest a claim of standing on mere allegations, but must provide evidence of specific facts that satisfy the standing requirements.  *See id*.

The uncontroverted evidence demonstrates that Fernandez did not suffer an Article III injury.  Ms. Kemp, his property manager, testified that she had no recollection of reading the OFAC/SDN "possible match" information in Fernandez's tenant screening report, nor did she know what OFAC refers to or where on the tenant screening report such information appears.  J.A. 207, J.A. 215. Ms. Kemp also confirmed that Fernandez's tenant application was not initially denied because of OFAC/SDN information, but because of the criminal history information, which caused the application to return a result of "Reject."  J.A. 214. Two days later, Fernandez's application was approved after he cleared up the criminal history issue.   J.A. 216.   Simply put, Fernandez did not suffer a reputational injury, or any other adverse effect, from the OFAC/SDN possible match information included in his tenant screening report.

The district court disregarded this evidence.  Attempting to draw a parallel to the Supreme Court's discussion in *TransUnion*, the district court opined that

Fernandez "suffered an injury far more significant than he would have suffered as the result of a defamatory letter sitting in a drawer."  JA 361–362 (citing *TransUnion*, 141 S. Ct. at 2210 (2021)).  That is not a reasonable conclusion in the face of Ms. Kemp's sworn testimony.  Unread information has the same impact as a letter sitting in a drawer—which is none at all—and does not cause an actionable injury.  *See Scottsdale*, 887 F.3d at 21 ("Logically . . . when the only third party exposed to a defamatory writing does not read that writing, a defendant is not liable for defamation.").

Reflecting some potential discomfort with the concept of injury resulting from mere transmittal, the district court further opined that "[b]ecause Fernandez's landlord paid RentGrow for the report, it would be reasonable for a jury to conclude that the individual(s) who reviewed [Plaintiff's] rental application did in fact see the [OFAC] alert and simply forgot."  J.A. 360–361.  There are several problems with this approach.

First, Article III jurisdiction is a threshold determination that may not be postponed.  *See Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 94 (1998) (rejecting exercise of hypothetical jurisdiction in which courts suspended Article III determinations); *see also Baehr*, 953 F.3d at 248 ("Without jurisdiction the court cannot proceed at all in any cause.") (quoting *Steel Co*., 523 U.S. at 94.).

To the extent the district court sought to sidestep the Article III analysis, the court abdicated its responsibility to determine its jurisdiction as a threshold matter.

Second, the district court's speculation is premised on an implausible view of the record. Ms. Kemp testified that she did not recall viewing *any* prospective tenant's OFAC/SDN information, including the information in Fernandez's report; did not know what OFAC refers to; and did not know where in the report such information appears. J.A. 207. Moreover, unlike in *TransUnion*, the OFAC/SDN screen was not a separate add-on product that property managers specifically opted into. 141 S. Ct. at 2201. No reasonable interpretation of Ms. Kemp's testimony— nor any other record evidence—would permit a conclusion that she actually read the OFAC/SDN information in Fernandez's report but "simply forgot" it.[5] *See, e.g.*, *Heiderman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (noting district court abuses its discretion where its evaluation of the evidence "follows from a plainly implausible, irrational, erroneous reading of the record" (internal quotations and citation omitted)).

Third, even assuming it would be appropriate to hypothesize that Ms. Kemp read but forgot the OFAC/SDN information in Fernandez's report, the undisputed record establishes that she did not "understand" its defamatory significance and no

---

[5] Moreover, the district court's proposition proves too much. One could speculate that *any* witness "simply forgot" some fact and draw an unsupported conclusion in direct opposition to the witness's testimony.

harm befell Fernandez as a result. A loss of reputation occurs "only if [the defamatory statement is] communicated to (and read and understood by) third persons." *Walden v. Fiore*, 571 U.S. 277, 287 (2014); *see also* Rest. (Second) of Torts § 577 cmt. c ("[I]t is necessary not only that the defamatory matter be brought to the attention of a third person but that he understand its defamatory significance."). Not only was Ms. Kemp unfamiliar with what OFAC refers to, J.A. 207, and thus could not have been scandalized by a reference to a possible match, but the fact that the OFAC possible match information does not factor into an applicant's result further evidences the lack of any perceived reputational impact by property managers receiving the reports. Information that flows through a system but does not register with anyone or impact a decision-maker is the very definition of information that is "merely processed" and not actionable. *TransUnion,* 141 S. Ct. at 2210 n.6.

As this Court found in *Baehr*, the result, even assuming RentGrow were found to have violated the FCRA, would be "a statutory violation divorced from any real world effect." 953 F.3d at 244, 254 (affirming summary judgment against plaintiffs who failed to prove they were deprived of impartial and fair competition among settlement services providers); *see also Pierre v. Midland Credit Mgmt., Inc.*, Nos. 19–2993 & 19–3109, 2022 WL 986441, at *3 (7th Cir. Apr. 1, 2022), *reh'g denied*, 36 F.4th 728 (7th Cir. 2022) (finding "there was nothing for the court

to remedy" where omission in consumer debt notice "deprived [plaintiff] of no benefit"). Because Fernandez did not suffer any real-world harm from the OFAC/SDN information in his report, there is no injury for the court to remedy.

In sum, Fernandez is not "himself among the injured" and thus lacks Article III standing and cannot represent the class. *Lujan*, 504 U.S. at 563 (explaining that Article III "requires that the party seeking review be himself among the injured"). Reversal of the class certification order is warranted on this basis alone.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY CERTIFYING A CLASS BASED ON THE ERRONEOUS HOLDING THAT ALL CLASS MEMBERS SUFFERED ARTICLE III INJURY

The individualized issues raised by Fernandez's lack of standing would permeate the class. As a result, the district court erred in holding that Fernandez met his burden of establishing the Rule 23 requirements of predominance, ascertainability, commonality, typicality, and superiority.

Just like Fernandez, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion*, 141 S. Ct. at 2208 (observing that "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not" (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466, (2016) (Roberts, C. J., concurring))). The district court readily acknowledged that if Article III injury depends on whether a third party actually read the OFAC/SDN information in a tenant screening report, the putative class

cannot meet Rule 23(b)(3)'s predominance requirement because individualized inquiries "undoubtedly" would predominate.[6] J.A. 361.

The district court solved the acknowledged predominance problem by eliminating the injury requirement as interpreted by the Supreme Court and instead finding that every putative class member suffered an Article III injury based on the mere transmission of their tenant screening report to a third party.[7] J.A. 362-363. The district court reached this conclusion notwithstanding its recognition that "some evidence" exists to "challenge" an assumption that property managers actually read the OFAC/SDN information. J.A. 358. Yet this evidence establishes conclusively that individualized inquiries will be required. In addition to Ms. Kemp's testimony about her own lack of review, the standard practice at her property management company was not to review the full report where the result

---

[6] Fernandez likewise acknowledged that determining whether a third party read the OFAC/SDN information would require interviewing the prospective landlords for each class member. J.A. 276–277.

[7] The district court suggested that requiring class members to prove that the OFAC/SDN information in their reports was actually read would make it "functionally impossible to sustain a class action." J.A. 361. The court cites no authority (and RentGrow knows of none) to support the conclusion that one's ability to prosecute a claim as a class action has a bearing on Article III standing. To the contrary, the Article III standing requirement functions to "promote[] procedural fairness." *In re Interior Molded Doors*, 2019 WL 4478734, at *12; *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (noting class action vehicle is not intended to "sacrifice[e] procedural fairness"). Moreover, the district court's concern is misplaced. Where the evidence supports class-wide Article III injury, certification will be appropriate. *See, e.g.*, *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022).

was "Accept." J.A. 196–197, J.A. 203–204. Because RentGrow's reports do not factor OFAC/SDN search results into the accept/reject outcome, it is not uncommon for reports resulting in "Accept" to include information about a possible OFAC/SDN match. J.A. 175–176, J.A. 234. Such reports were not routinely read by Questar Management. J.A. 203–204.

The district court disregarded this evidence and focused exclusively on the act of transmission, to the exclusion of what happened next. Recent decisions by other Circuit Courts of Appeal issued in the wake of *TransUnion* help explain the analytical step overlooked by the district court.

In *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022), the Seventh Circuit reviewed a case involving a debt-collector that allegedly failed to indicate in its consumer reports transmitted to TransUnion that debts were disputed by consumers, an alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. In analyzing Article III standing deriving from inaccurate information in a consumer report, the court explained that the "essential point . . . that has always been necessary to prove publication" for a defamation claim is whether the third party "[understood] the defamatory nature of the communication." *Ewing*, 24 F.4th at 1154 (citing Rest. (Second) of Torts § 577 cmt. c). The court thus asked "whether TransUnion [the recipient of the information in that case akin to the property managers here] understood the

defamatory significance of the Debt Collectors' reports." *Id.* The court found that it did because TransUnion incorporated the inaccurate debt information into the consumer credit reports it sold to third parties and TransUnion's assessment of credit-worthiness took into account whether or not a debt was disputed. *Id.* In other words, the information was not merely received or processed by TransUnion, it was understood and acted upon.

In a subsequent ruling reversing a jury verdict following class certification, the Seventh Circuit further explained that Article III standing existed in *Ewing* due to evidence that the omissions in consumer reports "caused the plaintiffs' credit scores to decline," whereas in a prior case, *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 334 (7th Cir. 2019), there was no standing where an alleged omission in a credit report "deprived [plaintiff] of no benefit." *Pierre*, 2022 WL 986441, at *3. The *Pierre* court reiterated the fundamental point that "[a] plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized." *Id.* (citing *TransUnion*, 141 S. Ct. at 2210–11).

Here, the district court did not conduct the analysis described in *Ewing*. The district court failed to consider the "essential point" of whether the prospective property managers understood the allegedly defamatory significance of the OFAC/SDN information. Had the court done so, it would be clear that there is no answer applicable across the class. Unlike in *Ewing*, the OFAC/SDN search result

was not automatically incorporated into property managers' decision-making process and did not uniformly impact putative class members' tenant applications. *Cf. Ramirez v. TransUnion LLC*, No. 3:12—cv-00632-JSC, (Burns Decl.), ECF No. 128–4 (N.D. Cal.) (testifying that Nissan policy was to shut down the loan application if OFAC appeared on a consumer's credit report).

The Second Circuit has also analyzed *TransUnion's* application where evidence fails to show that allegedly defamatory information was actually read by a third party. In *Maddox*, the court reversed a district court's determination that plaintiffs had Article III standing to seek statutory damages for a violation of New York's mortgage-satisfaction-recording statutes. 19 F.4th at 65. The defendant bank had failed to file a timely satisfaction of mortgage with the county clerk's office. The plaintiffs argued in part that this failure "created a false impression adverse to their credit status," subjecting them to risk of other harms, such as "failure to obtain financing for other properties and damage to personal credit." *Id.* at 61. The district court concluded that Article III injury existed because a failure to timely record a mortgage satisfaction "could cloud title to real property, inhibit sale of the property, and affect a mortgagor's credit." *Id.*

On review, the Second Circuit noted that "the facts in *TransUnion* bear a strong enough resemblance to those in this case that the Supreme Court's treatment of them proves highly instructive." *Id.* at 62–63. The court further noted that "a

lender's delay in recording a mortgage satisfaction risks creating the false appearance that the borrower has not paid the underlying debt and is thus more indebted and less creditworthy. This type of reputational harm—*i.e.*, one that flows from the publication of false information— is well established as actionable at common law." *Id.* at 65. However, there was no evidence that the plaintiffs suffered any reputational harm: "The misleading record may have been public and available to all; but, so far as is known, it was read by no one." In *TransUnion*, by contrast, "[t]here could be no doubt that the third-party businesses viewed those credit reports, which they had specifically requested and paid for." *Id*.

Given the record evidence in this case showing that leasing agents frequently do not review OFAC/SDN information in tenant screening reports, there is no plausible basis to find class-wide injury. As the district court recognized, Rule 23(b)(3)'s predominance requirement thus fails because individual inquiries will be necessary to determine class members' standing. Moreover, RentGrow is entitled to test each class member's claim of concrete harm by adducing evidence that the OFAC/SDN information was not actually read or understood and the class member suffered no injury, just as it did with Fernandez. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (noting class certification is improper if a defendant will be deprived of the opportunity to litigate its defenses to individual

claims); *see also Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 342 (4th Cir. 1998) (decertifying class).

Although lack of predominance is sufficient to defeat class certification, the individual inquiries required to establish standing negate other Rule 23 elements.

- **Ascertainability**: Class members must be readily identifiable using objective criteria, and there must be an administratively feasible way to determine class membership. *See EQT Prod. Co.*, 764 F.3d at 358. The district court erred in concluding that class members are readily identifiable because "no proof that each putative class member's report was read and understood by a third party" is required. J.A. 381.

- **Commonality**: The district court similarly erred in finding commonality on the basis that no individualized Article III showing is necessary. J.A. 384. In reality, commonality is lacking because the question of class-wide injury is not one to which there is a common answer. *See Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is the capacity of a class-wide proceeding to generate common *answers*." (emphasis in original)).

- **Typicality**: Because Fernandez did not suffer injury, his claim is not typical of putative class members' claims. *See Dukes,* 564 U.S. at 348 (stating that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members"); *Deiter v. Microsoft Corp.*, 436 F.3d

461, 466 (4th Cir. 2006) ("The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" (quoting *Broussard*, 155 F.3d at 340)).   Moreover, the determination of Article III injury would dominate the litigation, which also defeats typicality.

- **Superiority**:   It is well-settled that where individualized proof is necessary, the class mechanism is not "superior."   *See, e.g*., *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 216–17 (E.D. Pa. 2007).

In sum, the district court's flawed Article III analysis led to a cascade of erroneous rulings on the Rule 23 elements.   A proper application of the Article III requirements demonstrates that the individualized inquiries necessary to determine class members' standing to pursue statutory damages claims would engulf issues common to the class and render class action treatment unmanageable.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, this Court should reverse the district court's order

of class certification.

Dated:      August 1, 2022        /s/ Maura K. Monaghan

| | |
|---|---|
| Bonnie Keane DelGobbo | Maura K. Monaghan |
| **BAKER & HOSTETLER LLP** | Kristin D. Kiehn |
| One North Wacker Drive, Suite 4500 | Emilia N. Brunello |
| Chicago, Illinois 60606 | **DEBEVOISE & PLIMPTON LLP** |
| Tel: (312) 416–6200 | 919 Third Ave. |
| bdelgobbo@bakerlaw.com | New York, NY 10022 |
| | Tel: (212) 909–6000 |
| Joel Griswold | Fax: (212) 909–6836 |
| **BAKER & HOSTETLER LLP** | mkmonaghan@debevoise.com |
| SunTrust Center | kdkiehn@debevoise.com |
| 200 South Orange Ave., Suite 2300 | enbrunello@debevoise.com |
| Orlando, Florida 32801–3432 | |
| Tel: (407) 649–4088 | |
| jcgriswold@bakerlaw.com | |

*Counsel for Defendant-Appellant RentGrow, Inc.*

## REQUEST FOR ORAL ARGUMENT

This appeal, which this Court allowed under Rules 5 and 23(f), presents important issues relating to the requirements for class certification and the proper interpretation of the Supreme Court's recent opinion in *TransUnion v. Ramirez*. RentGrow respectfully submits that oral argument may be of assistance to the Court and is appropriate given the importance of this case.

Respectfully submitted,

/s/ Maura K. Monaghan

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    a.  This brief contains 7, 294 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    a.  It has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.


Dated:      August 1, 2022        <u>/s/ Maura K. Monaghan</u>

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing Brief of Appellant has been electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Maura K. Monaghan